### Richmond.

## GREEN v. CLAIBORNE AND ALS.

### MAY 19th, 1887.

MARRIED WOMEN— *Trustees—Powers— To sell— To mortgage.*—Where deed of settlement empowers married woman to change investment, and the trustees, upon her written request, to sell trust property and ·invest proceeds in other property upon same trusts, this does not authorize those trustees to mortgage the trust property for payment of bonds given for other property bought by those trustees as such, nor is she empowered to authorize them so to do ; and a mortgage executed by them under such circumstances is *ultra vires* and void.

Appeal from decree of circuit court of Henrico county, thirteenth June, 1884, in the chancery suit wherein Julia A. Green and another were complainants and Herbert A. Claiborne and others were defendants. The object of the suit was to annul and to enjoin sale under a trust deed executed twenty-first February, 1861, by Alexander Grant, Jr., to John Wickham, to secure certain bonds held by John H. Wickham on lands which had been conveyed to said Grant in trust for the benefit of said Julia A. Green, on the ground that said Grant had no lawful authority to execute the same, and that she was legally unable to give him such authority. Said Claiborne was substituted trustee in the place of John Wickham, who declined to execute the trust. The decision being adverse to the complainant, she procured an appeal to this court. Opinion states the case.

*W. W. & B. T. Crump* and *John S. Wise,* for appellant.

*Guy & Gilliam,* for appellees.

HINTON, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Henrico county, which declares certain separate real estate of the appellant, Julia A. Green, chargeable with a debt incurred by her trustee in purchasing fifteen slaves, and which directs a sale of such separate estate for the payment of said debt. The following is a brief statement of the material facts of the case : On the nineteenth day of February, 1840, a post-nuptial deed of settlement was made between the said Julia A. and her husband, Benjamin W. Green. By the terms of the settlement the property conveyed, or that substituted for it, was to be held by H. A. Crenshaw and Alexander Grant, Jr., in trust for the separate use, benefit, advantage and support of the appellant during the joint lives of herself and husband, with the power of appointment in her, by will or deed, in case she should die first, and failing in which the property is to pass to the children and next of kin; and in the event of her surviving her husband, the trustees are required to transfer the property to her absolutely.

In this deed occurs the following provision : " If any time hereafter it shall be the wish and desire of her, the said Julia Ann Green, to sell and dispose of any of the property hereby conveyed in the trust as is above mentioned, either real or personal, in order to invest the money arising therefrom in some other kind of property which will be more productive and conducive to her comfort and support, and shall signify such wish and desire to the said trustees hereby authorized to act by an instrument in writing under her hand —— seal, attested by the like number

of witnesses, that then, or as soon thereafter as shall be convenient, the said Alexander Grant, Jr., and Hamilton A. Crenshaw, or the survivor of them, or the executors and administrators of such survivor, at such time and place and in such manner as they shall think most fit and beneficial for the trust reposed in them, shall proceed to sell the property thus designated and desired to be sold by her, the said Julia Ann, and lay out the money arising from such sale and hold the property thus purchased by them for the uses and purposes, and under such provisos and agreements, limitations and restrictions as are set forth and declared in relation to the trust herein first above mentioned."

Of this provision it may be observed in passing, that, if a literal interpretation is to be given to it, it only authorizes the trustees, upon the request of the *cestui que trust* in writing, to sell and dispose of the trust property, and to invest the money arising from the sale thereof in other property, to be held upon the same trusts.

On the twentieth day of March, 1846, a tract of one hundred acres of land was conveyed to the said trustees by Richard Willis, to be held by them upon the trusts declared in the above mentioned deed of settlement. On the twenty-eighth of July, 1843, a tract of 270 acres of land was conveyed by Warner W. Guy and wife to the same trustees, upon trusts differing from the trusts of the deed of settlement, but which ought in fact to have conformed to the trusts in the deed of settlement.

On the twenty-first of February, 1861, and after Crenshaw had died, Grant, the surviving trustee, purchased of John H. Wickham fifteen slaves, for which he gave his bonds as trustee for the sum of sixteen thousand dollars, payable in equal annual instalments of two thousand dollars, with interest payable annually, and to secure the payment of these bonds, executed, simultaneously with the

·deed from Wickham conveying the slaves, a deed of trust upon the said slaves and the tracts of land conveyed, as above stated, by Guy and wife and by Willis.

The slaves were emancipated, as one of the results of the war which soon followed, and in June, 1875, H. A. Claiborne, substituted trustee in the trust deed of February 21, 1861, advertised for sale the real estate conveyed by the deeds from Guy and Willis, when the appellant, Julia A. Green, whose husband had died in 1872, filed her bill and obtained an injunction stopping the sale. The bill denies the validity of the deed of trust of February 21, 1861, asks that it may be annulled, and closes with a prayer for general relief.

The defendants, Pulliam's executor and Gregory, who were the then holders of the bonds given by Grant, trustee, to Wickham, answered the bill. They assert the validity of the deed of 1861, and claim that the fee of the appellant in the Willis tract and her interest in the Guy tract, whatever it may be, should be subjected to their bonds. When the cause came on to be heard, the court decreed that the Willis tract of one hundred acres was legally mortgaged for the bonds by the deed of 1861, and should be sold absolutely to pay them, but that the appellant·had but a life·estate in the Guy tract of 270 acres, and that it should be sold to pay said bonds. In rendering this decree we are satisfied, after a careful consideration of the case, the court erred.

It is undoubtedly well settled in this State that a married woman is regarded in equity as the owner of her separate estate and has the *jus disponendi* incident to such estate, except so far as it is denied or restrained by the instrument creating it. *Nixon* v. *Rose,* 12 Gratt. 425 ; *McChesney and als.* v. *Brown's Heirs,* 25 Gratt. 393 ; *Bank of Greensboro* v. *Chambers,* 30 Gratt. 209. But this power of alienation is subject to such limitations and restrictions as are con-

tained in the instrument which may give it *sub modo* only, or withhold it altogether, for, as Lord Cottenham says in *Tullett* v. *Armstrong*, 18 Eq. Ch. R. 405, when the court first established the separate estate, it violated the laws of property between husband and wife, but it was thought beneficial and it prevailed.

It being once settled that a wife might enjoy separate estate as a *feme sole*, the laws of property attached to this new estate, and it was found as part of such law that the power of alienation belonged to the wife and was destructive of the security intended for it. Equity again interfered and, by another violation of the laws of property, supported the validity of the prohibition against alienation. And it seems to be at last settled that the question which so frequently arises upon the construction of marriage settlements as to the mode to be observed by the wife in the disposition of the property settled to her use when the instrument creating the separate estate prescribes a mode of disposing of it, cannot be determined by the application of the maxim *expressio unius est exclusio alterius*, but is a question of construction. In this effort the court will be guided by the paramount rule which requires that in the construction of every instrument, it must be so construed as, if possible, to give effect to every part of it, and in order to discover the intention of the parties, it will look, not only to the terms of the instrument, but to the subject matter and the surrounding circumstances. While, therefore, the maxim can be no longer allowed the controlling force which seems to have been accorded it in *Williamson* v. *Beckham*, in determining the mode to be observed by the wife in the disposition of the property settled to her separate use, the fact that a particular mode has been prescribed may still be looked to as one circumstance tending to show the extent of the powers of alienation given her.

But we do not regard the inquiry here so much as one of

the *cestui que trust* to alien her separate property, but rather as a question of the power of the trustee over the *corpus* of the estate, and of the right of the married woman to divest herself of her separate estate in this way. It being perfectly clear from the terms of the deed of settlement that the only power conferred upon the trustee is the power *to sell and re-invest*, the inquiry must be whether such a naked power can be construed to authorize the trustee to divest himself, even with the concurrence of the *cestui que trust*, of the title to both properties, or in other words, to embark in any venture, no matter how desperate. We think it clear that it cannot be so construed. That the power to sell does not confer the power to mortgage has been decided over and again, and yet the decree can, in our opinion, be only upheld upon the assumption that the power of sale does confer the power to mortgage. *Bloomer* v. *Waldron*, 3 Hill Sup. Ct. R. 361; *Tyson* v. *Latrobe*, 42 Md. 325; *Loving* v. *Brodie*, 134 Mass. 453; *Head* v. *Temple*, 4 Heiskell, 34.

And as in this State as the married woman can only dispose of the *corpus* of her separate real estate in the mode prescribed by the instrument creating the estate, or in the mode prescribed by law for the alienation of real estate by married women, or by last will and testament, since the Code of 1849, we think it follows that she could confer no such power upon her trustee. *Justis* v. *English*, 30 Gratt. 571.

Our conclusion is, therefore, that the decree of the circuit court of Henrico is erroneous and must be reversed, the deed of trust of February, 1861, be set aside and annulled, and the trustee in said deed must be perpetually enjoined from acting thereunder.

DECREE REVERSED.